1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TODD ASHKER and DANNY TROXELL,

        Plaintiffs,

  v.

ARNOLD SCHWARZENEGGER, et al.,

        Defendants.

_____/

No. C 05-03286 CW (PR)

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO
DISMISS AND DENYING IT IN
PART AND DENYING IN PART
PLAINTIFFS' MOTION TO
AMEND COMPLAINT

(Docket Nos. 75, 89, 94,
98, and 103)

    Plaintiffs Todd Ashker and Danny Troxell are state prisoners incarcerated at Pelican Bay State Prison (PBSP).  Plaintiffs filed a civil rights complaint for damages, injunctive relief and declaratory relief pursuant to 42 U.S.C. § 1983.  Defendants move to dismiss Plaintiffs' first, third, fourth and fifth causes of action for failure to exhaust their administrative remedies.[1]  Plaintiffs oppose the motion.  For the reasons discussed below, the Court GRANTS in part Defendants' motion to dismiss and DENIES it in part AND DENIES in part Plaintiffs' motion to amend their complaint.

BACKGROUND

    The following facts are taken from Plaintiffs' First Amended Complaint (FAC).  Plaintiffs are incarcerated at the PBSP Special Housing Unit (SHU).  Ashker was sentenced to a six year prison term

---

    [1]Defendants do not move to dismiss Plaintiffs' second cause of action for a First Amendment violation based on Defendants' banning certain magazines, or the state law causes of action for negligence (sixth cause of action) and for intentional tort (seventh cause of action).

for burglary in 1984.  In 1990, he was convicted of second-degree murder of another inmate at PBSP and was sentenced to a prison term of twenty-one years to life.  Ashker has been housed in the SHU at PBSP since 1990.  Troxell plead guilty to first-degree murder in 1979 and is serving a sentence of twenty-six years to life. Troxell has been housed in the SHU since 1989.

Plaintiffs were placed in the SHU because of their alleged membership in or association with the Aryan Brotherhood (AB) prison gang; they were each re-validated as gang members on July 8, 2003. Both deny that they are AB members or associates.  Due to their alleged gang associations, they are housed in the SHU on "indeterminate" status.  FAC at ¶¶ 6, 7, and 8.  According to Plaintiffs, California Department of Corrections and Rehabilitation (CDCR)[2] policy is that Plaintiffs cannot be released from the SHU unless they are paroled, they debrief or they are inactive in gang activity for a period of six years.  FAC at ¶ 13.

"Debriefing is the process by which a gang coordinator/investigator determines whether an inmate/parolee (subject) has dropped out of a gang."  Cal. Code Regs. tit. 15, § 3378.1(a).  "The object of the debriefing is to learn enough about the subject and the subject's current gang to:  (1) allow staff to reasonably conclude that the subject has dropped out of the gang, and (2) allow staff to reclassify the subject. . . " Cal. Code Regs. tit. 15, § 3378.1(b).

Plaintiffs filed the present action on August 11, 2005.  This

---

[2]The California Department of Corrections and Rehabilitation was formerly known as the California Department of Corrections.

United States District Court
For the Northern District of California

action raises claims, originally filed on May 19, 2004, that were previously dismissed without prejudice in <u>Ashker v. Schwarzenegger</u>, 2006 U.S. Dist. LEXIS 14625 (N.D. Cal.).  Plaintiffs filed their FAC on January 30, 2006.

LEGAL STANDARD

I.   Exhaustion

Title 42 U.S.C. § 1997e(a), amended by the Prison Litigation Reform Act of 1995 (PLRA), provides, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This exhaustion requirement only applies to cases filed after the PLRA's passage on April 26, 1996. <u>Bennett v. King</u>, 293 F.3d 1096, 1097-98 (9th Cir. 2002).

Exhaustion is mandatory and no longer left to the discretion of the district court.  <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382 (2006) (citing <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." <u>Id.</u>  Even when the relief sought, such as monetary damages, cannot be granted by the administrative process, a prisoner must still exhaust administrative remedies.  <u>Id.</u> at 2382-83 (citing <u>Booth</u>, 532 U.S. at 734).

The purposes of exhaustion are to provide the administrative agency a full and fair "opportunity to correct its own mistakes with respect to the programs it administers before being haled into federal court," and to promote efficiency by encouraging claims to

3

be settled at the administrative level or by providing a useful record for subsequent judicial consideration. <u>Woodford</u>, 126 S. Ct. at 2385.

An action must be dismissed unless the prisoner exhausted his or her available administrative remedies before he or she filed suit, even if the prisoner fully exhausts while the suit is pending. <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199 (9th Cir. 2002); <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed).  The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. <u>Jones v. Bock</u>, 127 S. Ct. 910, 925-26 (2007) (rejecting "total exhaustion-dismissal" rule); <u>Lira v. Herrera</u>, 427 F.3d 1164, 1170 (9th Cir. 2005).

The PLRA exhaustion requirement calls for "proper exhaustion" of available administrative remedies. <u>Woodford</u>, 126 S. Ct. at 2387.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 2386. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." <u>Jones</u>, 127 S. Ct. at 922-23. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that

United States District Court
For the Northern District of California

define the boundaries of proper exhaustion.  Id. at 923.

II.   Affirmative Defense

Non-exhaustion under § 1997e(a) is an affirmative defense. Jones, 127 S. Ct. at 922-23; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003).  Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required specifically to plead or demonstrate exhaustion in their complaints.  Jones, 127 S. Ct. at 921-22.

A non-exhaustion claim should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. Wyatt, 315 F.3d at 1119.  In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact.  Id. at 1119-20.[3]

III.   State Administrative Remedies

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDCR 602 inmate appeal form, (3) second level appeal to the

---

[3]  If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust -- a procedure closely analogous to summary judgment -- the prisoner must have fair notice of his opportunity to develop the record. Wyatt, 315 F.3d at 1120 n.14.  Because Plaintiffs have filed many documents supporting their opposition, the Court concludes that they have had fair notice to develop the record.

United States District Court
For the Northern District of California

institution head or designee, and (4) third level appeal to the
Director of the CDCR.  Id. § 3084.5; Barry v. Ratelle, 985 F. Supp.
1235, 1237 (S.D. Cal. 1997).  This satisfies the administrative
remedies exhaustion requirement under 42 U.S.C. § 1997e(a).  Id. at
1237-38.

## DISCUSSION

Defendants move to dismiss Plaintiffs' first, third, fourth
and fifth claims: (1) violation of First Amendment freedom to
associate; (3) violation of Fifth Amendment freedom against self-
incrimination, arising from the CDCR's debriefing requirement;
(4) violation of Eighth Amendment prohibition of cruel and unusual
punishment, also arising from the debriefing requirement; and
(5) (a) violation of the ex post facto clause of the United States
Constitution by transforming Plaintiffs' convictions with sentences
allowing for parole into sentences of life without the possibility
of parole, (b) violation of the due process clause of the
Fourteenth Amendment based on lack of access to prison programs due
to Plaintiffs' SHU status, which prevents them from being granted
parole, (c) violation of the equal protection clause of the
Fourteenth Amendment because of different treatment of white SHU
inmates, (d) violation of procedural and substantive due process
under the Fourteenth Amendment based on the deprivation of their
liberty interest in being granted parole, and (e) violation of
procedural and substantive due process by denying release from the
SHU based on their inactive status in the AB, when no reliable
evidence is presented to demonstrate participation in recent
illegal gang activity.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Defendants argue in their motion to dismiss that the Court cannot decide the merits of these claims because Plaintiffs have not satisfied the administrative exhaustion requirement.  In support of their argument for dismissal of the first, third, fourth and fifth causes of action, Defendants submit declarations by prison officials responsible for the administration and tracking of inmate grievances.  Defendants also submit copies of the grievances filed by Plaintiffs that have been exhausted and the responses to those grievances at the first, the second and the Director's levels of review.

Plaintiffs argue that Defendants failed to establish that Plaintiffs have not exhausted their available administrative remedies as to the claims at issue.  In support of their argument that they have exhausted these claims, Plaintiffs submit copies of a number of grievances they have filed.

I. Defendants' Evidence

Defendants provide the declaration of N. Grannis, Chief of CDCR's Inmate Appeals Branch.  Grannis states that the Inmate Appeals Branch keeps an electronic record of each inmate appeal that has proceeded through the final level of review, which is the Director's Level, also referred to as the third level.  Grannis Dec. at ¶ 4.  This electronic system was commenced in 1993.  Id.  A search of the computerized system was conducted under Ashker's and Troxell's names.  Id. at ¶ 5.  Attached Exhibits C and J are copies of the computer printout of each appeal Ashker and Troxell, respectively, filed beginning in the year 1997 that was accepted for review at the Director's Level.  Id.  Attached Exhibits H and O

7

are copies of the computer printout results of Ashker's and Troxell's appeals that were screened out.  Id. at ¶ 7.

> Based on my review of the inmate appeals listed in Exhibits C and H, plaintiff ASHKER has not exhausted his appeals at the Director's level related to grievances for:  (1) Gang debriefing, gang validation, or Fifth Amendment right against self-incrimination as implicated by the debriefing process, (2) parole policies of the SHU inmates in an alleged "no parole policy" for SHU inmates; (3) challenging the gang debriefing process as violating the Eighth Amendment prohibition of cruel and unusual punishment; (4) unequal treatment based on race; or (5) violating the Ex Post Facto Clause of the Constitution for imposing a release date later than originally sentenced.

> . . .

> Based on my review of the inmate appeals listed in Exhibits J and O, plaintiff TROXELL has not exhausted his appeals at the Director's level related to grievances for:  (1) Gang debriefing, gang validation, or Fifth Amendment right against self-incrimination as implicated by the debriefing process, (2) parole policies of the SHU inmates in an alleged "no parole policy" for SHU inmates; (3) challenging the gang debriefing process as violating the Eighth Amendment prohibition of cruel and unusual punishment; (4) unequal treatment based on race; (5) violating the Ex Post Facto Clause of the Constitution for imposing a release date later than originally sentenced; or (6) education, vocational, and self-help programming in the Security Housing Unit.

Id. at ¶¶ 8 & 13.

Defendants also provide the declaration of D. Bradbury, the PBSP appeals coordinator.  Bradbury's duties include processing inmate appeals, assigning appeals to the appropriate staff, and monitoring and maintaining the computer database of inmate appeals.  Bradbury Dec. at ¶ 1.  Exhibit A, attached to Bradbury's declaration, is a computer printout from the inmate appeals office showing Ashker's appeals history.  Id. at ¶ 4.  Bradbury states he found the following:

8

**United States District Court**
For the Northern District of California

Exhibit A shows that many of the inmate appeals were never exhausted at the second level of the administrative appeals process. A true and correct copy of the following inmate appeals that were never exhausted at the second level of the administrative appeals process is attached as Exhibit B.

a. Inmate appeal bearing institutional log number PBSP-C-03-2721 was received by the inmate appeals office on October 10, 2003, and the first level response was completed on November 12, 2003. The appeal was not submitted to the appeals office for the second level of review.

Id. at ¶ 5.

Exhibit C, attached to Bradbury's declaration, is a computer printout from the inmate appeals office showing Troxell's appeals history. Id. at ¶ 7. Bradbury states he found the following:

Exhibit C shows that many of the inmate appeals were never exhausted at the second level of the administrative appeals process. A true and correct copy of the following inmate appeals that were never exhausted at the second level of the administrative appeals process is attached as exhibit D.

a. Inmate appeal bearing institutional log number PBSP-C-03-2720 was received by the inmate appeals office on October 10, 2003, and the first level response was completed on November 12, 2003. The appeal was not submitted to the appeals office for the second level of review.

Bradbury Dec. ¶ 8.

The inmate appeal bearing institutional log number PBSP-C-03-2721 is Ashker's appeal of his claim that being housed in the SHU for reasons other than a serious disciplinary action should not preclude him from receiving the same privileges as a General Population inmate. Id., Ex. B. The inmate appeal bearing institutional log number PBSP-C-03-2720 is Troxell's appeal of his claim to the same effect. Id., Ex. D.

9

United States District Court
For the Northern District of California

1    Defendants also provide the declaration of their counsel, B.

2  Kenny.  Attached as exhibits to the Kenny declaration are the

3  administrative appeals filed by Ashker and Troxell with the Board

4  of Parole Hearings (BPH)[4] relating to grievances from their parole

5  hearings.  Kenny Dec., Ex. D.  On January 13, 2004, Ashker

6  exhausted his remedies with the BPH regarding his appeal of the BPH

7  decision in which he contended that his ex post facto rights were

8  violated by a five year parole denial and that the BPH has a no-

9  parole policy for prisoners in indeterminate SHU status.  Id.

10  Troxell's parole hearing was on July 10, 2001, and he filed his

11  appeal on October 29, 2003.  Id.  Because Troxell submitted his

12  appeal over ninety days after his parole hearing, the appeal was

13  dismissed as untimely.  Id.

14    As noted above, Defendants bear the burden of proving that

15  Plaintiffs failed to exhaust their administrative remedies.

16  The documents and declarations produced by Defendants establish

17  that Plaintiffs failed to exhaust the administrative appeals

18  process for the first, third and fourth causes of action and some

19  of the claims in the fifth cause of action.

20  II. Exhaustion Analysis

21    A. Statute of Limitations

22    Respondents argue that the statute of limitations has run on

23  some of the causes of action in the complaint.  The Court denies

24  without prejudice Defendants' motion to dismiss to the extent it is

25  based on the statute of limitations because they have not had an

26  _____

27    [4]The Board of Parole Hearings was formerly known as the Board
of Prison Terms (BPT).

28                                10

opportunity to address Plaintiffs' arguments regarding the
continuing violations doctrine or equitable tolling; Plaintiffs
made these arguments in their supplemental opposition to
Defendants' motion to dismiss.  Defendants may reassert the statute
of limitations argument in their next motion to dismiss or their
motion for summary judgment.

B. Grievances Where Exhaustion is Disputed

The parties dispute whether several grievances submitted by
Plaintiffs have been exhausted.

1. Ashker's Appeal 04-2600

This appeal challenges denial of a grievance about CDCR's
procedures for establishing gang validation and inactive gang
status.  Id., Ex. 4 at 2.  Defendants argue that Ashker did not
file this appeal within fifteen working days of the event or the
decision being appealed as required by California Code of
Regulations, title 15, section 3084.6(c).  For this reason, this
appeal was screened out at the third level.  Ashker Dec., Ex. 4 at
10.  Section 3084.6(c) states that an "appellant must submit the
appeal within 15 working days of the event or decision being
appealed, or of receiving an unacceptable lower level appeal
decision."  Proper exhaustion of a grievance requires "compliance
with an agency's deadlines and other critical procedural rules."
Woodford, 126 S. Ct. at 2382.

Ashker argues that the appeal was timely.  He states that the
the action from which he appealed was the PBSP Institutional
Classification Committee's (ICC) annual review of his indeterminate
SHU status.  The ICC issued a "chrono" which stated that it

United States District Court
For the Northern District of California

11

**United States District Court**
For the Northern District of California

retained Ashker's SHU/indeterminate status based on his validation
as a member of the AB.  Ashker states that although the ICC's
decision was dated August 4, 2004, it wasn't until September 7,
2004 that he received the copy of the ICC "chrono" which advised
him of the committee's decision and of his right to appeal it.
Ashker states that he filed his appeal on September 15, 2004,
within fifteen days of his receipt of notice of the ICC's decision.
Ashker points out that Defendants processed the appeal as timely
through the first and second levels of review and denied it as
untimely only at the third level.  Ashker contends that this was an
error in the third level review and, thus, the grievance is
exhausted.

Defendants do not respond the Ashker's argument.  Because
there is a dispute of fact regarding the timeliness of this claim,
the Court denies Defendants' claim that this appeal was untimely.

2. "Group" Appeal 04-0566

Plaintiffs argue that this was a group appeal submitted on
behalf of Ashker and Troxell.  Ashker Dec. ¶ 51.  Defendants argue
that Plaintiffs did not meet the criteria for a group appeal.
California Code of Regulations, title 15, § 3084.2(f) provides that
a group appeal is acceptable when a group of inmates seeks to
appeal a decision, action or policy affecting all members of the
group.  In that case, one appeal form can be filled out with the
name and departmental identification number of the inmate who
prepared the appeal.  In addition, to qualify as a group appeal, "a
legible list of the participating inmates' names, signatures,
departmental identification numbers, and housing shall be attached

12

1    to the appeal."  Cal. Code Regs. tit. 15, § 3084.2(f)(1).

2         Although the appeal begins, "This is an appeal on behalf of

3    Ashker and Troxell, B #76578 . . .," the appeal does not contain an

4    attached list of participating inmates' names and signatures as

5    required by § 3084.2(f)(1).  Furthermore, Plaintiffs were put on

6    notice that Defendants considered this an appeal only on behalf of

7    Ashker because the First, Second and Third Level Reviewers'

8    Responses identify the inmate appealing as Ashker without any

9    mention of Troxell nor are there any references to the fact that it

10   is a group appeal.  Therefore, Plaintiffs have not established that

11   Troxell is a party to this appeal.

12        3. "Group" Appeal 03-2721

13        Defendants did not process this appeal on the grounds that one

14   inmate cannot appeal on behalf of another inmate pursuant to

15   § 3084.2(d) and that the appeal did not comply with the

16   § 3084.6(c) requirement that an appeal must be filed within fifteen

17   working days of the decision or action that is the subject of the

18   appeal.

19        Section 3084.2(d) provides, "An inmate . . . shall not submit

20   an appeal on behalf of another inmate . . ., except as provided in

21   subsection (f)."  As indicated above, § 3084.2(f) authorizes group

22   appeals when a decision, action or policy affects all members of

23   the group.

24        Plaintiffs responded to Defendants' refusal to process the

25   appeal by filing a statement that they were challenging the

26   director's policy mandating that an inmate housed in the SHU had to

27   become an informant to obtain release from the SHU.  Plaintiffs

28                                   13

stated that the director's policy affected both of them and "contrary to your view, there is no specified time limit to file a 602 challenging a CDCR policy."  Defendants repeated in their reply that the appeal exceeded the fifteen working day time limit, that one inmate cannot appeal on behalf of another, and that Plaintiffs were attempting to appeal a policy which had been well-established for many years.  On January 14, 2004, Defendant Grannis returned Plaintiffs' appeal to them on the ground that it had been rejected, withdrawn or cancelled.  Plaintiffs did not re-file their appeal at the second and third levels of review.

Thus, appeal 03-2721 does not exhaust any of the claims at issue.

### 4. Ashker's Appeal 05-01551

Ashker claims that this appeal exhausted his challenge to Defendants' policy of keeping inmates in the SHU unless they became informants.  Ashker Dec. ¶¶ 46, 53-54, Ex. 8.  This appeal was exhausted on December 13, 2005.  The present complaint was filed on August 11, 2005.  Because a prisoner must have exhausted all of his available remedies before filing suit, even if the prisoner fully exhausts while the suit is pending, appeal 05-01551 does not exhaust any of the present claims.

### 5. Troxell's Appeal, Troxell Dec., Ex. 2[5]

Troxell claims that this appeal, filed on February 16, 2004, exhausted his claim based on his classification as an active gang member.  Troxell ¶ 9, Ex. 2.  In this appeal, Troxell challenged a

---

[5]No number is listed on this appeal.

14

United States District Court
For the Northern District of California

June 23, 2001 decision by the Institutional Gang Investigation Unit (IGI) that he was an active gang member.  This appeal was screened out based on § 3084.6(c)'s requirement that appeals be filed within fifteen working days of the event or decision at issue.  As noted, proper exhaustion of an appeal requires "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S. Ct. at 2382.  Thus, this appeal does not exhaust any of the claims at issue.

6.  Troxell's Appeal, Troxell Dec., Ex. 3[6]

Troxell claims that this appeal, filed on November 8, 2004, exhausted his challenge to the inactive gang status classification criteria used by the CDCR.  Troxell Dec. ¶ 15, Ex. 3.  Troxell admits that he was informed that his appeal was beyond the fifteen day time limit.  Id. at ¶ 17.  Again, because he did not comply with section 3084.6(c), Troxell has not properly exhausted this challenge.

7.  Troxell's Appeal 05-01550

Troxell claims that this appeal exhausted his challenge to Defendants' policy of subjecting him to indeterminate SHU status due to his AB association.  Troxell Dec. ¶ 20, Ex. 4.  This challenge was exhausted on December 15, 2005.  Id., Ex. 4.  The present complaint was filed on August 11, 2005.  Because a prisoner must exhaust all of his available remedies before filing suit, even if the prisoner fully exhausts while the suit is pending, appeal 05-01550 does not exhaust any of the present claims.

_____

[6]No number is listed on this appeal.

United States District Court
For the Northern District of California

1    8. Troxell's Appeal, Troxell Dec., Ex. 5[7]

2  Troxell claims that this appeal, submitted on October 29,

3 2003, exhausted his administrative remedies regarding his challenge

4 to the BPH July 10, 2001 decision denying him a parole date.

5 Troxell Dec. ¶¶ 28-29, Ex. 5.  However, this appeal was dismissed

6 as untimely because it was filed over two years after Troxell's

7 parole hearing; the appeal deadline is ninety days from the date of

8 the parole denial.  Thus, Troxell's appeal in Troxell Dec., Ex. 5

9 does not exhaust any of the claims at issue.[8]

10  C. Which Causes of Action are Exhausted

11  To determine which of Plaintiffs' causes of action are

12 exhausted, the Court compares the appeals that have been properly

13 exhausted with Plaintiffs' causes of action to determine whether

14 the exhausted appeals provided Defendants with a full and fair

15 opportunity to adjudicate the causes of action.

16    1. First Cause of Action: Right of Association

17  None of the appeals submitted by Plaintiffs addresses the

18 issue of the violation of their First Amendment right of

19 association.  Therefore, the first cause of action is not exhausted

20 and must be dismissed.  It is dismissed without prejudice to

21 refiling once it is properly exhausted.

22

23 ————————————————

24   [7]No number is listed on this appeal.

25   [8]Troxell states in his declaration that the BPH hearing on
January 10, 2006 is relevant and related to the claims in his
26 complaint.  However, any claim regarding a January 10, 2006 hearing
would have to be timely exhausted and then sued on in federal
27 court.  Troxell submits no evidence that he has exhausted this
appeal.

28

**United States District Court**
For the Northern District of California

1

2

    2. Third Cause of Action: Fifth Amendment, Self-Incrimination and Procedural and Substantive Due Process

3

       (a) Self-Incrimination

4     Ashker contends that Appeal 04-00566 put Defendants on notice

5 that they are violating Plaintiffs' right against self-

6 incrimination.  Defendants argue that this appeal only challenged

7 the fact that, because Plaintiffs are housed in the SHU, they are

8 not provided access to vocational, recreational and educational

9 programs that are provided to the general prison population.

10 Plaintiffs acknowledge that the original appeal addressed only

11 their lack of access to vocational, recreational and educational

12 programs, but argue that their appeal "evolved" as it was

13 processed.

14     After reviewing appeal 04-00566 in its entirety, the Court can

15 find only one reference that could have alerted Defendants to the

16 fact that Plaintiffs were raising a claim regarding their right

17 against self-incrimination.  This is the statement, in the answer

18 to Defendants' denial of the first level appeal, that Plaintiffs

19 are faced with "a Hobson's choice of agreeing to become a

20 successful (CDC) informant (and thus being able to participate in

21 programs, etc. and thereby receive meaningful consideration for a

22 parole date), or doing life without parole in (SHU)."  This

23 statement was insufficient to provide Defendants a full and fair

24 opportunity to adjudicate the constitutional issue of Plaintiffs'

25 right against self-incrimination.  First, the issue was mentioned

26 only in terms of how it affected Plaintiffs' participation in

27 various programs.  Second, this statement appeared only in one

28

              17

United States District Court
For the Northern District of California

brief sentence in the middle of a very long response to Defendants' denial of the original appeal.  It was not apparent from this sentence that Plaintiffs were raising it as a separate claim.

Therefore, the claim for violation of the privilege against self-incrimination is not properly exhausted.  It is dismissed without prejudice to refiling once it is properly exhausted.

> (b) Procedural and Substantive Due Process Based on Refusal to Debrief

Plaintiffs argue that appeals 03-2721, Ashker's Ex. 7, and 05-1551, Ashker's Ex. 8, exhaust the procedural and substantive due process claims in the third cause of action.  However, as indicated above, appeal 03-2721 was rejected at the first level on the grounds that it was untimely and that one inmate cannot appeal on behalf of another.  Plaintiffs did not take it to the second and third levels.  Thus it does not exhaust any of the claims at issue.

Appeal 05-01551 was fully exhausted on December 13, 2005, but this complaint had been filed on August 11, 2005.  Because a prisoner must have exhausted all available remedies before filing suit, appeal 05-1551 does not exhaust any of the present claims. Because appeal 05-1551 may address Ashker's procedural and substantive due process claims, these claims are dismissed without prejudice to refiling in a new complaint.

C. Fourth Cause of Action: Cruel and Unusual Punishment

Plaintiffs argue that appeals 04-0566 and 03-2721 exhaust this claim.  However, appeal 04-0566 did not address AShker's right against cruel and unusual punishment; it addressed Ashker's inability to participate in certain programs.  Appeal 03-2721 was

18

not processed at the first level on the grounds that it was untimely and that one inmate cannot appeal on behalf of another. It was not taken to the second or third levels.  Therefore, this claim is not exhausted and is dismissed without prejudice to refiling once it is exhausted.

     D. Fifth Cause of Action

          1. Violation of Ex Post Facto Clause and Violation of Liberty Interest in Not Being Granted Parole

     The United States Constitution prohibits the federal government and the States from passing any "ex post facto Law." U.S. Const., Art. I, § 9, cl. 3 (federal government); Art. I, § 10, cl. 1 (States).  These clauses prohibit the government from enacting laws with certain retroactive effects:  any law that (1) makes criminal an act done before the passing of the law, which was innocent when done; (2) aggravates a crime or makes it greater than it was when it was committed; (3) inflicts a greater punishment for the crime than the punishment authorized by law when the crime was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  See Stogner v. California, 539 U.S. 607, 611-12 (2003); Carmell v. Texas, 529 U.S. 513, 519-538 (2000).

     While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979), a State's statutory parole scheme, if it uses mandatory language, may create a presumption

19

that parole release will be granted when or unless certain

designated findings are made, and thereby give rise to a

constitutionally protected liberty interest, <u>see</u> <u>Board of Pardons</u>

<u>v. Allen</u>, 482 U.S. 369, 376-78 (1987) (Montana parole statute

providing that board "shall" release prisoner, subject to certain

restrictions, creates due process liberty interest in release on

parole).  In such a case, a prisoner gains a legitimate expectation

in parole that cannot be denied without adequate procedural due

process protections.  <u>Id.</u> at 373-81; <u>Greenholtz</u>, 442 U.S. at 11-16.

California's parole scheme uses mandatory language and is

largely parallel to the schemes found in <u>Allen</u> and <u>Greenholtz</u> to

give rise to a protected liberty interest in release on parole:

> The panel or board shall set a release date unless it
> determines that the gravity of the current convicted
> offense or offenses, or the timing and gravity of current
> or past convicted offense or offenses, is such that
> consideration of the public safety requires a more
> lengthy period of incarceration for this individual, and
> that a parole date, therefore, cannot be fixed at this
> meeting.

Cal. Penal Code § 3041(b).  Accordingly, under the clearly

established framework of <u>Allen</u> and <u>Greenholtz</u>, "California's parole

scheme gives rise to a cognizable liberty interest in release on

parole." <u>McQuillion v. Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002).

The scheme creates a presumption that parole release will be

granted unless the statutorily defined determinations are made.

<u>Id.</u>  This is true regardless of whether a parole release date has

ever been set for the inmate, because "[t]he liberty interest is

created, not upon the grant of a parole date, but upon the

incarceration of the inmate." <u>Biggs v. Terhune</u>, 334 F.3d 910, 915-

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

16 (9th Cir. 2003).   The Ninth Circuit recently made clear that "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006).

Where an inmate challenges the constitutional validity of the state procedures used to deny parole eligibility or parole suitability, but seeks injunctive relief in the form of an earlier eligibility review or parole hearing rather than earlier release, the claim is cognizable under § 1983. Wilkinson v. Dotson, 544 U.S. 74, 82 (2005);[9] see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997) (if prisoner wins civil rights claim and is entitled to parole eligibility hearing, this does not guarantee parole or necessarily shorten his prison sentence).   Challenges to state parole eligibility decisions or procedures must be brought in habeas if success will necessarily result in immediate or speedier release.   Anyanwutaku v. Moore, 151 F.3d 1053, 1055-56 (D.C. Cir. 1998).

Ashker has properly exhausted an appeal to the BPH of a BPH parole denial, Ashker Dec., Ex. 9; Kenny Dec., Ex. D, although Troxell has not.   In his appeal, Ashker claimed that the BPH's decision violated the ex post facto clause.   However, if Ashker is

---

[9]This does not mean that such a claim may not be brought in habeas as well:   "[W]hen prison inmates seek only equitable relief in challenging aspects of their parole review that, so long as they prevail, could potentially affect the duration of their confinement, such relief is available under the federal habeas statute." Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004). Habeas and § 1983 are not mutually exclusive in such a case. Id. at 1031.

1   seeking an earlier release date, as it appears he is, the proper

2   procedure for challenging the denial of his appeal to the BPH is

3   through the filing of a petition for a writ of habeas corpus in

4   state court and presenting all the claims in the petition to the

5   highest state court.  Thereafter, he may file a petition for writ

6   of habeas corpus in federal court under the Antiterrorism and

7   Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254.

8       Therefore, the claim based upon the ex post facto clause and

9   the violation of a liberty interest based on parole denial is

10  denied without prejudice to filing in a habeas petition.

11                2. Violation of Procedural and Substantive Due Process

12      This claim alleges that Defendants deny Plaintiffs access to

13  programs required by the BPH thus the BPH does not give meaningful

14  consideration to Plaintiffs' parole requests.  It is not properly

15  brought as a civil rights cause of action because Ashker seeks

16  earlier release on parole which, as discussed above in regard to

17  the ex post facto claim, must be sought in a habeas petition.

18  Therefore, this claim is denied without prejudice to filing in a

19  habeas petition after exhaustion of state court remedies.

20                3. Violation of Equal Protection Based on Treating White
                     Inmates Differently than Other Races

21

22      The only appeal that mentioned an equal protection claim is

23  appeal 04-0566.  In his response to Defendants' first level denial

24  of this appeal, Ashker requested that PBSP "halt the longstanding

25  practice of subjecting white (SHU) prisoners to more isolation

26  (from their social group -- other whites) than any other 'ethnic

27  groups' in (PBSP--SHU)."

28                                      22

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

However, as discussed above, appeal 04-0566 only addressed the lack of programming available to Ashker.  Therefore, this appeal did not exhaust the equal protection claim.

> 4. Violation of Due Process Based on AB Validation Procedures

Ashker's appeals 01-2335 and 04-2600[10] and Troxell's appeal 88-1657 exhaust the due process claims based on Defendants' AB validation procedures.  However, some allegations in this cause of action address due process violations based on parole denial.  To the extent that this claim addresses the AB validation procedure, it is exhausted and may proceed; to the extent it addresses the denial of a parole release date, it is denied without prejudice to filing as a habeas petition after exhaustion of state court remedies.

> E. Summary

The only claim addressed in Defendants' motion that has been exhausted is Plaintiffs' claim that their due process rights are violated by Defendants' procedure for validating them as active or inactive gang members.  The proper treatment of a mixed complaint, i.e., a complaint with both exhausted and unexhausted claims, will depend on the relatedness of the claims contained within.  Lira v. Herrera, 427 F.3d 1164, 1175 (9th Cir. 2005).  When a prisoner has filed a mixed complaint and wishes to proceed with only the

---

[10]Defendants argue that appeal 04-0566 does not relate to any claim in the complaint because none of the claims address gang validation or inactive gang status.  However, Ashker's due process claims challenging the procedure used to determine an inmate's gang status involves a determination of whether the inmate is an active or inactive gang member.

23

exhausted claims, the district court should dismiss the unexhausted claims when they are not intertwined with the exhausted claims. Id. On the other hand, when a plaintiff's mixed complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims is the proper approach. Id. at 1176.

The Court will allow the four exhausted claims to proceed even though many of the claims in the complaint have been dismissed for failure to exhaust.

In summary, the following causes of action may be prosecuted: (1) Plaintiffs' second cause of action for a First Amendment violation premised on Defendants' not allowing Plaintiffs access to certain magazines; (2) Plaintiffs' due process claim based on Defendants' procedure for determining whether Plaintiffs are active or inactive gang members; (3) Plaintiffs' sixth cause of action for negligence and (4) Plaintiffs' seventh cause of action for an intentional tort.

III.   Second Amended Complaint

Plaintiffs move for leave to file a second amended complaint (SAC) (Docket No. 94), to add Susan Fisher and Robert Harmon, BPH commissioners who presided at Troxell's January 10, 2006 parole hearing, as additional Defendants, and to add two claims: (1) violation of Plaintiffs' First Amendment right not to speak by requiring them to become informants in order to be released from the SHU; and (2) violation of Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment in that prolonged

United States District Court
For the Northern District of California

isolation in the SHU adversely affects Plaintiffs' mental health.
Defendants have not filed an opposition to Plaintiffs' motion to
file a SAC.

In this Order, the Court has stated that Troxell may not bring
any claim based on his January 10, 2006 parole hearing because he
has submitted no evidence that this claim was exhausted.
Therefore, the Court DENIES Plaintiffs' motion to add Fisher and
Harmon as Defendants because there is no properly exhausted claim
against them.

The Court orders Defendants to file any opposition to
Plaintiffs' motion to add two additional claims no later than two
weeks from the date of this order.  Plaintiffs may file a reply no
later than two weeks after Defendants' opposition is served on
Plaintiffs.  Because there may be a statute of limitations issue
regarding the due process claim addressing Defendants' AB
validation procedure, Defendants are to provide further briefing on
the statute of limitations issue in their opposition to Plaintiffs'
motion to add two additional claims.  Plaintiffs may file a reply
no later than two weeks after Defendants' opposition is served on
Plaintiffs.

CONCLUSION

For the foregoing reasons,

1.  Defendants' motion to dismiss without prejudice the first,
third, fourth and a portion of the fifth cause of action in the FAC
(Docket no. 75) is GRANTED.

2.  Defendants' motion to dismiss the due process claim in the
fifth cause of action based on the AB validation procedure is

25

**United States District Court**
For the Northern District of California

1   DENIED.

2       3.  Plaintiffs' motion to file an SAC is DENIED in regard to

3   adding two new Defendants.  Defendants may file an opposition to

4   the motion to file two new claims; the schedule for filing briefs

5   is stated above.

6       4.  Plaintiffs' motion for leave to file a memorandum of

7   points and authorities in excess of twenty-five pages (Docket no.

8   89) is GRANTED in light of Plaintiffs' <u>pro se</u> status.  Plaintiffs'

9   motion to supplement their opposition to their motion to dismiss

10  (Docket no. 98) is GRANTED because Defendants raised new arguments

11  in their reply brief.  Plaintiffs' motion to continue trial date

12  and associated discovery, motion and conference dates (Docket no.

13  103) is GRANTED.  The trial and discovery dates are vacated.  Ten

14  days after the Court rules on Plaintiffs' motion to add two new

15  claims to their complaint, Plaintiffs and Defendants shall submit

16  proposed schedules suggesting new dates for discovery, motions, a

17  pretrial conference, and trial.

18      5.  This order terminates Docket Nos. 75, 89, 98, and 103.

19      IT IS SO ORDERED.

20

21  Dated:  6/14/07

22                          CLAUDIA WILKEN
                            United States District Judge

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ASHKER ET AL et al,

          Plaintiff,

  v.

SCHWARZENEGGER ET AL et al,

          Defendant.
_____/

Case Number: CV05-03286 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 14, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Danny  Troxell B-76578
Pelican Bay State Prison
P.O. Box 7500, C-8-101
Crescent City,  CA 95531

J. Randall Andrada
Andrada & Associates
180 Grand Avenue
Suite 925
Oakland,  CA 94612

Todd  Ashker C-58191
Pelican Bay State Prison
P.O. Box 7500, D1-119
Crescent City,  CA 95531

Dated: June 14, 2007

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

United States District Court
For the Northern District of California