FILED

2007 JUL 13 PM 1:16

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

The United States District Court
For The Northern District Of California
Oakland Division

| | |
|---|---|
| Todd Lewis Ashker and Danny Troxell,<br>Plaintiffs,<br>vs.<br>Arnold Schwarzenegger, et al.,<br>Defendants. | Case No. C05-3286 C.W.<br>Plaintiffs Reply To Defendants' Opposition Re: Second Amended Complaint; and Statute of Limitations |

Todd Ashker, C58191
Danny Troxell, B76578
P.O. Box # 7500/D-SHU
Crescent City, CA. 95532

Plaintiffs, In pro-se —

# TABLE OF CONTENTS

PAGE

Introduction ... 1.

A. Second Amended Complaint ... 3.

B. Plaintiffs Claims Are Not Barred By The Statute Of Limitations ... 4.

   [1] When did plaintiffs know, or have reason to know that challenged policy(s) caused them harm ... 6.

   [2] The Court Should Equitably Toll The Statute of Limitations ... 8.

   [3] Continuing Violation ... 10.

Conclusion ... 11.

## TABLE OF AUTHORITIES

| CASE | PAGE |
|---|---|
| Abiff v. Slaton, 806 F.Supp. 993 [N.D. Ga. 1992] | 10 |
| In re Castillo [Sacramento Superior Court #98-F05216] | 9 |
| Castillo v. Alameida, et al. [N.D. Cal. #C94-2847] | 10 |
| Dixon v. Page, 291 F3d 485 [2002] | 5. |
| Green v. L.A. Co. Superintendent of Schs, 883 F2d 1472, 1480 [9th Cir 1989] | 5. |
| Heard v. Sheahan, 253 F3d 316 [7th Cir 2001] | 5. |
| Hewitt v. Helms, 459 U.S. 460, 477 [1983] | 10. |
| Madrid v. Gomez, 889 F.Supp. 1146, 1229-30, 1240, 1263, 1267 [N.D. Cal. 1995] | 4,7,8,9 |
| McClary v. Coughlin, 87 F.Supp. 2d 205 [W.D.N.Y. 2000] | 10. |
| Tworivers v. Lewis, 174 F3d 987, 991 [9th Cir 1999] | 5. |
| Savory v. Lyons, 469 F.3d 673 [7th Cir 2006] | 5. |

**STATUTE / CAL. CODE REGS, Title 15**

| | |
|---|---|
| Cal. P. Code §186.22. | 10. |
| CCR. Title 15 § 3378(d)(e) | 9. |
| CCR Title 15 §§ 3023, 3312, 3315 | 10. |

Todd Ashker, C58191
Danny Troxell, B76578
Box #7500/D-SHU
Crescent City, Cal. 95532
Plaintiffs, In pro-se

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

TODD LEWIS ASHKER and DANNY TROXELL,
Plaintiffs,
vs.
ARNOLD SCHWARZENEGGER, et al.,
Defendants.

CASE NO. C05-3286 C.W.
Plaintiffs' Reply To Defendants' Opposition RE: Second Amended Complaint; and Statute Of Limitations

Plaintiffs, proceeding pro-se, hereby respectfully submit this Reply Brief, in response to the Defendants' Opposition To Motion To File Second Amended Complaint; and Supplemental Briefing Re: Statute Of Limitations.

INTRODUCTION

The court is familiar with the facts of the case. However, a few points of reference are provided for clarification purposes.

On June 14, 2007, this court issued an order [Granting in Part Defendants' Motion to Dismiss and Denying in part Plaintiffs' Motion to File Second Amended Compl. [re: adding Fisher and Harmon as defendants.]

In the order, the court dismissed all of plaintiffs' 1st, 3rd, 4th, and most of the 5th Causes of Action, based on a finding that their claims against the (CDC) defendants' were not fully exhausted prior to filing suit; and, that the claims against the (BPH)' sought early release on parole and therefore

1.

must be brought via Writ of Habeas Corpus, after state court exhaustion." The only claims remaining are: the (2nd) Cause of Action [RE: Magazine and mail issues]; and, (5th) Cause of Action [due process claims re: PBSP-CDCR-Gang Validation Procedures - including the challenge that the policy [and related criteria] defining active gang membership/current gang activity - justifying (6) years of (SHU), per (6) year review, is illegal per state and federal law.

As a preliminary matter, plaintiffs have filed a, "Motion Seeking Leave To Move For Reconsideration Of Portions Of The Order Filed June 14, 2007," per Civil Local Rule 7-9(b)(3). Which, if permitted by the court, and thereafter granted in whole, or in part, may impact the S.A.C., and Statute Of Limitations issues.

Additionally, in the Order of (6-14-07), the court reviewed the (602) Appeals Plaintiffs Exhausted in Dec. 2005, and determined claims raised therein still had to be dismissed without prejudice because these appeals were exhausted after the action was filed. Thus, plaintiffs are filing a separate Motion To Deem The (SAC) To Be A "Supplemental Complaint", on the basis that Ashker and Troxell's Dec. 2005 Appeals, in combination with the 1988, 1992, 2001, 2004 (including 2004 "Group" Appeal) do demonstrate full exhaustion.

The (SAC) seeks to add (BPH) Defendants [Fisher and Harmon]; plus the following claims related to those in the (FAC), as follows: [1] The 1st Amend. Right Not To Speak; [2] The 8th Amend. Right to be free of cruel and unusual punishment re: serious risk of severe injury [mental illness], caused by prolonged (SHU) conditions for over (20) years; and [3] The 8th Amend. Right to be free of cruel and unusual punishment resulting from the combined risk(s) associated with means to gain release from (SHU) [e.g. informant status, and related risk of physical injury; or indefinite (SHU) [and thus risk of mental illness], combine to the level of a Constitutional Violation.

Defendants' claim that: "Ashker's only exhausted and timely claims involve his gang status inactive review on [8-1-01] and PBSP-ICC review of his indeterminate status on [8-4-04]." And, "Troxell's due process claims are all barred by the statute of limitations." Both assertions are meritless, as discussed below.

2.

A.

## SECOND AMENDED COMPLAINT

Plaintiffs' Motion To File A Second Amended Complaint provides the details supporting their request and reason(s) for filing it when they did. The "(2) years since the filing of the complaint" is, once again, a misstatement of the facts, by defendants, as reflected by the file and record, and plaintiffs explained in their declarations in support of their Motion, their situation(s) and circumstances of going pro-se in Sept. 2006, and just becoming aware of the new theories, and serious potential of experiencing irreparable harm [mental illness], shortly before filing the Motion and SAC.

Defendants' objections are without merit, as applied to this case, for the following reasons:

[A] No trial date has been set; [B] The claims are related to those before the court [Troxell exhausted his challenge to indefinite (SHU), and debriefing-informant requirement for release from (SHU) in 1988; Ashker did so, in 1992, 2001, and 2004... and they both put defendants on notice that continued (SHU) and Hobson's choice of informant status, or death over time in (SHU) was illegal in their "Group Appeal" in (2004); and the defendants very clearly and specifically acknowledged, and responded to these complaints, stating "That is CDC's position," in their responses to the "Group Appeal", and "Requests For Admissions" [Please see, Motion For Leave To Seek Reconsideration" at Ashker's Decl., in Support thereof, and Exh.#2 attached thereto];

[C] The Law is constantly evolving, especially in prison conditions cases and as acknowledged by the U.S. Supreme Court... prison conditions are scrutinized pursuant to our societies"... evolving standards of decency."

Defendants' claim plaintiffs should have known about the potential of long term (SHU) conditions potential for causing serious mental illness

3.

(16) years ago. The problem is, the courts and expert psychologists were not certain this was true [See for example: Madrid v. Gomez, 889 F.Supp at 1267]. And it has only been in the past few years that evidence, based on studies by experts, has come to light, which suggests that prolonged (SHU) conditions have a high probability of causing serious mental damage to the majority of inmates subject to such conditions. And, the longer one is subject to the (SHU) the greater the risk [See: Motion To File SAC, Memorandum at pages #9-11]

If the court were to adopt defendants' position, once plaintiffs (or any inmate(s)), were placed in (SHU) on "indefinite status", and a court at that time said this was appropriate.... they could never challenge this, irregardless of changes in the law, and/or evolving standards of decency.

The reason the mental effects of long term (SHU) are only now being definitively "discovered", is because, it's only during the past (20-25) years that our society has deemed it permissable to keep a person in (SHU) conditions — solely based on an associational label — based on other inmate informants who are rewarded for informing. And these inmates subject to such conditions are the "study group".

Defendants were very clear in 1988, 1992, 2001, 2004, [especially in their response to the Comp Appeal] you will remain in (SHU) unless/until you become an informant — period.

Thus, based on the Motion, and File/record of the case, plaintiffs move the court to permit their [SAC] to proceed.

B.

PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE
STATUTE OF LIMITATIONS

The statute of limitations for §1983 causes of action are governed by the personal injury statute of limitations of the state in which the action arose. See Owens v. Ogurokure 48 US 235 [1989]. In California this is (2) years,

4.

plus a (2) year tolling period for prisoner actions, which means California prisoners have (4) years from the date of the injury to file a complaint [per C.C.P. § 335.1] Additionally, the time a prisoner spends exhausting administrative remedies is "tolled" from the time limits that apply to pursuing a court action [See Dixon v. Page, 291 F3d 485 (2002); and 3 Witkin, Cal. Procedure (4th ed 1996), at Actions § 659, pp 841-843]

However Federal law controls the question of when a claim accrues; and under Federal law, "a claim accrues when the plaintiff knows, or has reason to know of the injury which is the basis of the action." Two-rivers v. Lewis, 174 F3d 987, 991 (9th Cir 1999) This principle is important in this case because the question is, when did plaintiffs know of the injury(s), which are the basis of the action. Plaintiffs' position is that they did not know, or have reason to know of, the injury(s) defendants' policy(s) have caused them until Late 2003.

Additionally, defendants' due process, and discriminatory practices-policies, are continuing violations. To invoke the "continuing violations doctrine", a plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during that period [Green v. LACO. Superintendent of Schs, 883 F.2d 1472, 1480 (9th Cir 1989] An example of this doctrine's application in the prison context is illustrated in a medical care case which held, "... Everyday that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. This is based on the doctrine of "continuing violation", a doctrine governing accrual and sometimes governing tolling. Heard v. Sheahan, 253 F.3d 316 (7th Cir 2001) [cited in Savory v. Lyons, 469 F3d 667, 673 (7th Cir 2006].

5.

[1] Why did plaintiffs know, or have reason to know that defendants policy(s) of de facto indefinite (SHU) status caused them harm, thereby <u>starting the clock for statute of limitations purposes.</u>

Plaintiffs' First, and Second Amended Complaints, and basis for their claims therein, clearly state that they first <u>became aware of their injury(s) in October of 2003</u>. Because this is when they came to believe that defendants policy(s) of indefinite (SHU) status, and lack of programming would be cause for a de facto "life without parole" sentence, absent agreeing to become an informant [See FAC at, paras # 11-18, 98, 106-107]

Plaintiffs also were not aware that defendants policy(s)/practices pertaining to <u>gang classification(s), and active/inactive issues, were being applied in an arbitrary manner</u> until around <u>late 2003</u>, because that's the first time they read an article in a periodical called Moaist Int. Movement. The article was dated <u>Oct. 15, 2003</u>, and was an indepth report concerning hearings before Calif. Senator Romero, and others. The subject; California's Prison System and the purpose of (SHU). The article refers to testimony from Prison Law Office Attorney Don Spector, who stated "(CDC) Administrators, by their own testimony stated there are 40,000 to 60,000 <u>gang members in the system</u>." The (SHU) <u>holds (1500)</u>, a <u>few hundred</u> "validated" gang members/associates, many of whom have been in (SHU), solely on the "validation" for (15-25) or more <u>years</u>. After this article, plaintiffs read <u>several additional articles concerning hispanic and black gang members/associates being out of (SHU) in (CDC) "General Population" Prisons</u>, in the Sacramento Bee, and many others. This was the basis for (FAC, <u>paras # 12-18, 48-70, 132-145, 147, 155-156</u>) And, on Aug. 12, 2005, the "Sacramento BEE" presented an article called, "A Fractured Message" which included a reference to the F.B.I. website

6.

listing of the most dangerous street gangs, including [Nortenos, allies of the "Nuestra Familia Prison Gang"], and [Surenos, "associates" of the "Mexican Mafia Prison Gang"]; and another article dated (6-11-04) stated both groups are "associates" of these prison gangs [per C.D.C. "experts"]; another article dated Feb. 2005, stated (CDC) estimates [2/3] of the 162,000 prisoners are gang members/associates. Most of whom are in "General Population."

In support of plaintiffs claim that they became aware of their injury(s) in late 2003, are the findings cited in Madrid v. Gomez, 889 F.Supp. 1146 at 1229-1230 (N.D. Cal. 1995)[... "Social Isolation - opportunities for social interaction with other prisoners ... are essentially precluded..." "In sum those incarcerated in the SHU for any length of time are severely deprived of normal human contact ... conditions in [SHU] amount to a "virtual total deprivation, including, in so far as possible, deprivation of human contact."]

Thus, how were plaintiffs expected to "discover" their injury(s) [i.e. that indefinite, arbitrary (SHU) status would be cause for denial of meaningful parole review; and, that defendants claimed such indefinite (SHU) status was legitimate, and condoned by the ruling in Madrid e.g. gang membership/association by itself presents a threat to safety-security; while allowing tens of thousands of gang members-associates to be in general population]; Plaintiffs have been isolated in (SHU), without any real ability to "discover" their injury(s) before 2003, [See F.A.C., at paras# 11-18, 48-70, 98, 106-107, 132-156] Noteably, defendants have had plaintiffs Complaints, and related appeals, and they know of this position, yet they have never addressed it, nor referred to any evidence to dispute this. See also following discussion about equitable tolling which is further support for plaintiffs position here.

7.

[2] <u>The Court Should Equitably Toll the Statute of Limitations.</u>

Tolling is appropriate in this case, defendants' policies/practices have been and continue to be arbitrary and capricious. Each of the defendants are career corrections personel (Woodford began working at San Quentin in 1978; Hickman, before that; McGrath and Kirkland were both administrators for PBSP) going back to <u>1992-1994; in CDC 1985</u>. There have been 'major changes' to the policy(s) at issue [gang status - indefinite (SHU) status], during the apex of their careers, as illustrated by the following:

In the <u>Madrid</u> ruling, the court points out that defendants' insistence that PBSP-SHU is "working" as a secure environment for disruptive prisoners does not and cannot determine whether the (SHU) passes constitutional muster. [<u>Madrid, supra</u>, 889 F. Supp. at 1263] [at footnote 204, the court states: "Defendants have presented PBSP-SHU as a centerpiece of their program to decrease violence in the Cal. prison system. However, evidence regarding SHU's significance is <u>inconclusive</u>. Statistics submitted via the defendants show a <u>consistent rate of decline in violence since 1984</u>, five years before (PBSP) opened its doors in December 1989].

This was per <u>Madrid</u> in (1995); since then, California's prison system has become <u>more</u> violent than ever before, and in (2006) an article came out stating there were over (300) riots for the fiscal year. These prisoner rioting were the result of (CDCR) policy to place known rival gangs on the same general-population yards together, in already over crowded prisons. Once they riot, they lock'em down for a month or two, transfer some to other "general populations," then gradually open up the 'out of cell' time again, until they riot again, etc. etc. etc.

Yet, based on defendants' representations to the court in <u>Madrid, supra</u>, the court gave deference to administrators' assertions that, prison gang members and associates, had to be locked up in (SHU) <u>indefinitely</u>, until they <u>debriefed</u>, paroled, or died; because, this "status" all by itself, constituted a serious threat

8.

to the safety and security of Californias institutions. Thus the court upheld this policy in (1995) [See Madrid, supra, at 1240]. The problem was, such policy was an "underground" rule, until being properly promulgated on June 11, 1999, in response to a court ruling that such underground policy was illegal. SEE [In re Castillo, Sacrament Superior Ct. # 98-F05216, Order]. At this time, in response to this Order, defendants created the alleged "alternative" means for gaining (SHU) release. That is, being free of "gang activity" for a period of (6) years. [CCR Title 15 § 3378(e), added via amendment on 8-30-99].

But apparently, and noteably, there were already active gang members, and associates in "general population" prisons, as indicated by [CCR Title 15, 3378-(d)] which states, "a gang member or associate in "general population" may be classified as inactive, with (2) years free of documented gang activity." And we know for a fact there are tens of thousands of active gang members, and associates in (CDCR) "general population" prisons, based on numerous news paper articles, quoting (CDCR) gang experts, spanning October 2003, to the present.

As specifically detailed in the (FAC), plaintiffs have never been found guilty of an illegal act relating to any gang. They did not recieve their initial review regarding "inactive status" until (2001); where upon, defendants deemed them "active" based on inmate informants unsubstantiated allegations [If there was evidence substantiating such claims, defendants rules and regulations mandate a "serious rule violation report"; and as stated above, plaintiffs have never recieved any, alleging they committed "an illegal act on behalf of a gang" in over 23-28 years in prison], and their next meaningful review would be in (2007). All the while, there are tens of thousands of prison gang members/associates on the majority of (CDCR) "general population" prisons.

Defendants are all aware of, and were personally involved in the events at issue, and should not be permitted to claim, time has clouded their memories.

9.

### 3. Continuing Violation

One of plaintiffs' claims relates to defendants' wrongful failure to release them from (SHU) to a general population. From 1988 to 1999 defendants' "policy" of confining prisoners classified as gang members/associates to indefinite (SHU) terms until they snitched, paroled, or died, was an illegal underground policy.

And at some point in time defendants began to arbitrarily enforce this policy by keeping certain inmates on indefinite (SHU) status, while allowing tens of thousands of others to be on general population status.

In 2003-2004, the defendants stipulated in the federal case of Castillo v. Alameida Jr., et al [N.D. Cal. #C94-2847], that "gang-activity" is defined in the [CCR Tit.15], when reading the applicable rules together, "gang activity" is defined as: "Inmates shall not knowingly promote further or assist any gang ... [with] planning, organizing, threatening, financing, soliciting, or committing unlawful acts or acts of misconduct classified as serious pursuant to section §3315 [which requires issuance of a "rule violation" per 3312; See §3023]

This definition is from: Cal Penal Code 186.22, regarding criminal enhancements for illegal gang related acts described above [CCR. Tit 15 Sect. 3023 at Note]

Plaintiffs' indefinite (SHU) status, based on policy(s) and practices that are arbitrary, without meaningful review(s), and based on factors-criteria as to what constitutes "activity" justifying denial of "inactive status" and related release to a general population prison, is analogous to the wrongful failure to release a prisoner who has served his sentence [See e.g. Abiff v. Slaton, 806 F.Supp. 993 [N.D. Ga. 1992] for example]

Also, the U.S. Supreme Court declared in (1983) that, "administrative-segregation may not be used as a pretext for indefinite confinement of an inmate." [Hewitt v. Helms, 459 US 460, 477 n.#9] [See also: McClary v. Coughlin 87 F.Supp. 2d 205 (W.D.N.Y. 2000)]

10.

And plaintiffs have been subject to a de facto, indefinite (SHU) status, and each time defendants held their SHAM "annual reviews," started a new violation of their constitutional right to regular, meaningful reviews of their (SHU) status.

### Conclusion

For the foregoing reasons, plaintiffs' motion to file the SAC should be granted. In the alternative, plaintiffs request that this Court deem the SAC a Supplemental Complaint (per accompanying motion) and allow all claims to proceed. Additionally, the statute of limitations should not be an issue requiring the dismissal of any of the claims, and the continuing violation theory applies, allowing potential compensation during the entire relevant time span.

Dated: July 9, 2007

Respectfully Submitted,

Todd L. Ashker    Danny Troxell
Todd Lewis Ashker    Danny Troxell

— Plaintiffs, In pro-se —

11.

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101a #2105.5, 20 U.S.C. 1746)

I, _T. Ashker C58197_, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the _9_ day of _July_, in the year of 20_07_, I served the following documents: (set forth the exact title of documents served) _RE: C05-3286 CW Plaintiff's Reply To Defendants' Opposition Re: Second Amend Comp. and Statute of Limitations. w/ Ashker Declaration_

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

| | |
|---|---|
| U.S. District Court<br>1301 Clay St, 400 South<br>Oakland, Cal 94612-5212 | Brendan Kenny<br>Attorney At Law<br>180 Grand Ave., Ste 925<br>Oakland, Cal 94612 |

I declare under penalty of perjury that the foregoing is true and correct.

Dated this _9_ day of _July_, 20_07_.

Signed: _T. Ashker_
(Declarant Signature)

Rev. 12/06