IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD ASHKER and DANNY TROXELL,<br><br>    Plaintiffs,<br><br>  v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>    Defendants.<br>_____/ | No. 05-03286 CW<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DELAYED MAIL CLAIM AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUPPLEMENTAL FILING (Doc. # 378) |

Plaintiffs Todd Ashker and Danny Troxell, inmates housed in the Secured Housing Unit (SHU) at Pelican Bay State Prison (PBSP), filed this civil rights complaint alleging various causes of action against many Defendants. On March 25, 2009, the Court issued an order on the parties' cross-motions for summary judgment in which it granted summary judgment to Defendants on all claims with the exception of the claim for prospective injunctive relief for late delivery of incoming mail, against Warden Francisco Jacquez, acting in his official capacity.[1] Because the remaining claim was for injunctive relief, the Court determined that it would be adjudicated in a bench trial and, because the evidence would be documentary and not subject to determinations of credibility, it

---

[1] Plaintiffs argue that their claim is for declaratory relief as well as injunctive relief. As discussed below, the Court concludes Plaintiffs have failed to establish a constitutional violation. Thus, the Court would find in favor of Defendant Jacquez on any claim for declaratory relief.

would be done on the basis of declarations, depositions and documents submitted to the Court.  Also, the Court indicated that the two relevant issues for trial would be the pervasiveness and length of the delays in incoming mail at times other than holidays, compared to the volume of mail that is delivered timely, and whether Defendant Jacquez could utilize different methods for processing incoming inmate mail that would not cause such delay.[2]

The parties have filed trial briefs with declarations and documentary evidence.  Defendant Jacquez objects to some of the evidence submitted by Plaintiffs.  The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence.  The Court will not discuss each objection individually.  To the extent that the Court has relied on evidence to which Defendant Jacquez has objected, such evidence has been found admissible and the objections are overruled.

The Court now enters its findings of fact and conclusions of law.

## FINDINGS OF FACT

In conjunction with their motion for summary judgment, Plaintiffs submitted seventeen envelopes addressed to them, all sent in 2005, and all bearing a postmark date from a United States Post Office, a hand-stamped date and a handwritten date. Plaintiffs wrote the handwritten date on each envelope to indicate the date they received that envelope.  A date was hand-stamped on

---

[2] In their opening trial brief, Plaintiffs suggested that the issues for trial included incoming and outgoing personal and legal mail.  However, in their reply brief, Plaintiffs acknowledge that the only issue for trial is the late delivery of incoming personal mail.

2

each envelope by a mailroom employee. The Court found that this evidence showed that, in 2005, there was a seventeen to thirty-seven day time lag between the postmark dates and the dates the envelopes were received by Plaintiffs.

In conjunction with their opening trial brief, Plaintiffs submit fourteen envelopes addressed to them, postmarked in November and December, 2005 and January, 2006, with the hand-stamped and handwritten dates described above. In the March 25, 2009 Order, the Court indicated that the relevant evidence was mail delivered at times other than holidays. Therefore, the envelopes submitted by Plaintiffs that were mailed during the Thanksgiving and Christmas holidays are excluded. The dates on the four envelopes that were mailed before or after the holidays indicate that Plaintiffs received them eighteen to twenty-two days after they were postmarked. Mr. Ashker submits one letter postmarked April 21, 2009, which he states he did not receive until July 14, 2009, eighty-four days after it was postmarked. However, in their declarations, Plaintiffs state that, after the Court issued its March 25, 2009 Order, the prison began processing the mail in a more timely manner. Ashker August 27, 2009 Dec.¶ 12, Troxell August 27, 2009 Dec. ¶ 7 (Doc. ## 364, 365).

After the Court issued the March 25, 2009 Order, the prison initiated a new mail processing tracking system. Ashker August 27, 2009 Dec. ¶ 9, Troxell August 27, 2009 Dec. ¶ 6; Kurt McGuyer, Captain of the PBSP Investigative Services Unit (ISU), November 2, 2009 Dec. ¶ 8(a) and (b) (Doc. # 372). Captain McGuyer supervises the Institutional Gang Investigations (IGI) Unit, which includes

3

officers who review, screen and deliver the incoming and outgoing mail of inmates housed in the SHU. Beginning on July 1, 2009, the officers in the IGI unit began date-stamping mail they inspected; the mail is date-stamped when the screening is initiated and it is again date-stamped when the screening is completed. McGuyer Dec. ¶ 8(b). Beginning on October 20, 2009, the mail for the most influential gang members and associates is delivered by the mailroom staff directly to the IGI unit. McGuyer Dec. ¶ 8(a). Other mail that is inspected by the IGI unit is first delivered to the housing unit, screened by the unit staff and delivered to the IGI unit the following day. McGuyer Dec. ¶ 8(a). Mail addressed to the most influential gang members and associates receives heightened scrutiny, but this adds only one or two days to the review process. McGuyer Dec. ¶ 8(e).

With their reply brief, Plaintiffs submit envelopes mailed in October, November and December, 2009. Because most of these envelopes were mailed during the Thanksgiving and Christmas holidays, they do not accurately depict the efficiency of mail delivery by the prison. Even so, the dates indicate mail is received by Plaintiffs in a more timely manner than in 2005. For instance, an envelope postmarked November 18, 2009 was stamped by the mailroom on November 23, 2009 and received by Mr. Ashker on December 2, 2009. January 15, 2010 Ashker Dec. at ¶ 6(a) (Doc. # 377-1). This indicates that, despite the Thanksgiving holiday, Mr. Ashker received this mail fourteen days after it was postmarked. An envelope postmarked December 9, 2009 was received by Mr. Ashker on December 22, 2009. This indicates that, despite

4

the upcoming Christmas holiday, Mr. Ashker received the mail thirteen days after it was postmarked. An envelope postmarked November 23, 2009 from Manchester, England was received by Mr. Ashker on December 7, 2009--fourteen days after it was postmarked despite the Thanksgiving holiday and the fact that it was mailed from England.

In a supplemental filing, Plaintiffs submit envelopes mailed in January, 2010 addressed to Mr. Troxell and to Phillip Evans, another inmate housed in the PBSP SHU. (Doc. # 378).[3] Five of the envelopes addressed to Mr. Troxell and six of the envelopes addressed to Mr. Evans have legible postmarks. Each envelope bears three hand-stamped dates, one from the mailroom and two from the IGI unit, in addition to the date handwritten by Mr. Troxell or Mr. Evans indicating when they received each envelope. These dates show there was an eleven to fifteen-day period between the postmark date and the date the envelope was received by Mr. Troxell or Mr. Evans.

PBSP mailroom employees divide incoming mail into two categories: legal mail and personal mail. Silva Dec. ¶ 4. The mailroom receives several thousand items of incoming mail each day. Silva Dec. ¶ 6. The PBSP mailroom is staffed by seven full-time employees who work eight hour days, five days per week. Silva Dec. ¶ 14. Additional hours and staff are authorized for the processing of mail when it is determined the volume of mail will delay delivery beyond seven days. Silva Dec. ¶ 14. Mail arrives in the

---

[3] Plaintiffs' motion to file supplemental evidence, (Doc. # 378), is granted.

5

mailroom at approximately 9:00 a.m. each day and is sorted into bins, with a separate bin for each housing unit. Silva Dec. ¶ 6. Then, each piece of personal mail is opened and examined to ensure it does not contain contraband or illegal communications and that any stamps, money orders and pictures contained in the mail are properly processed. Silva Dec. ¶ 7. Each piece of personal mail is date-stamped and placed in a delivery bag that corresponds to the housing unit of the addressee. Silva Dec. ¶ 8. Mr. Silva states that this process is completed by approximately 2:00 p.m. each weekday and that it typically takes two days for the mailroom to process and deliver incoming mail, from the time it arrives in the mailroom from the United States postal service to delivery to the housing units. Silva Dec. ¶¶ 9, 12.

However, based on the supplementary evidence submitted by Plaintiffs, Mr. Silva's last statement is not credible. In general, the envelopes in Plaintiffs' supplemental filing bear a date stamp from the mailroom that is four or five days later than the date of the postmark. The first of the two IGI unit date stamps indicate that the IGI unit receives the envelopes approximately nine to ten days after the date of the mailroom stamp. For instance, Mr. Troxell's exhibit (b) bears a postmark of January 6, 2010, a mailroom date-stamp of January 11, 2010 and an incoming IGI date stamp of January 21, 2010. This indicates a ten-day lag from the time the mailroom dated this piece of mail until the day the IGI unit received it. Other envelopes show a nine-day period between the mailroom date-stamp and the incoming IGI unit date-stamp.

6

In general, the second IGI date-stamp on the envelopes, indicating when the screening process is complete, is the same day or the day after the date-stamp indicating the day the IGI unit received the envelope. Mr. Troxell's and Mr. Evans' handwritten dates indicate they received the envelopes the same day the IGI unit completed its screening. Thus, the mailroom spends approximately nine to ten days processing personal mail and the IGI unit spends one to two days processing personal mail.

## CONCLUSIONS OF LAW

### I. Permanent Injunction

A party is entitled to a permanent injunction if it shows that (1) it has suffered an irreparable injury; (2) legal remedies, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, an equitable remedy is warranted; and (4) the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006); Geerston Seed Farms v. Johanns, 570 F.3d 1130, 1136 (9th Cir. 2009).

### II. First Amendment Law Regarding Mail Delays

Prisoners enjoy a First Amendment right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning incoming mail received by

7

prisoners from non-prisoners.  Thornburgh, 490 U.S. at 413.

Prison officials have a responsibility to forward mail to inmates promptly.  Bryan v. Werner, 516 F.2d 233, 238 (3d Cir. 1975).  Allegations that mail delivery was delayed for an inordinate amount of time are sufficient to state a claim for violation of the First Amendment.  Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996).  A temporary delay in the delivery of mail resulting from a prison's security inspection does not violate a prisoner's First Amendment rights.  Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999).

Title 15, sections 3120-3146 of the California Code of Regulations (CCR) govern the receipt, processing and delivery of inmate mail.  First class mail shall be delivered to the inmate as soon as possible, but not later than seven calendar days from receipt of the mail at the facility mailroom.  CCR § 3133(a)(1). All non-confidential mail addressed to an inmate will be opened and inspected before delivery to the inmate and is subject to being read in its entirety by designated staff.  CCR § 3133(b)(3).

Defendant Jacquez first argues that Plaintiffs' letters mailed in 2005 are not relevant to support a claim for prospective injunctive relief.  Although the 2005 letters are over five years old, they are relevant to establish the mail system that was in effect at the time Plaintiffs filed their complaint.  Defendant Jacquez next argues that Plaintiffs are not entitled to injunctive relief because their First Amendment rights are not violated by delayed delivery of their personal mail, they have not proven irreparable harm, the balance of equities does not favor an

8

1 injunction, the public interest does not support an injunction and
2 legal damages would be adequate.

    A. Constitutional Violation

As indicated in the March 29, 2009 Order, in 2005, inmate addressees received their mail seventeen to thirty-seven days from the date of the postmark. Even if the post office delivers mail to the prison three to four days after it is postmarked, in 2005, the prison delivered personal mail to Plaintiffs from thirteen to thirty-three days after the prison received it from the post office. Under the summary judgment standard, this delay was sufficient to raise a material dispute of fact regarding whether Plaintiffs' First Amendment rights were violated by delay of mail for an inordinate period of time. See March 25, 2009 Order at 16.

However, in 2009, the prison implemented a new mail-screening system for SHU inmates, including Plaintiffs. On the envelopes mailed in 2010, the dates hand-stamped by the mailroom staff are three to four days after the postmark date. The IGI unit now stamps each envelope upon receipt by that unit. Comparing the mailroom and IGI unit stamps shows that the mailroom takes approximately nine to ten days to sort and screen the mail and deliver it to the IGI unit. The IGI unit dates indicate that it screens the mail in one to two days. The mail is delivered to Plaintiffs immediately after the IGI unit completes its screening process. This means that Plaintiffs receive their personal mail seven to eleven days after receipt by the mailroom.

As discussed above, CCR § 3133(a)(1) requires delivery of personal mail to inmates within seven days of receipt by PBSP.

9

1  Therefore, the prison is in violation of § 3133(a)(1) when
2  Plaintiffs receive their mail later than the required seven days.
3  However, Plaintiffs have failed to cite any authority, nor is the
4  Court aware of any, that holds that the delivery of mail four days
5  beyond the regulatorily required seven days rises to the level of a
6  constitutional violation.  The prison must process thousands of
7  pieces of mail each day, all of which must be screened for prison
8  security.  The courts must give deference to the prison
9  administration's security procedures.  See Thornburgh, 490 U.S. at
10 407-08.  The delay in the delivery of mail is not sufficient to
11 amount to a constitutional violation.
12      B. Irreparable Injury
13      Plaintiffs declare that they are irreparably injured by the
14 late delivery of mail because it causes harm to their relationships
15 with their families and friends, they eventually lose touch with
16 these people, and, after years of continuously delayed mail
17 delivery, they hardly receive any personal mail.  See September 18,
18 2008 Troxell Dec. ¶ 9 (Doc. # 283); September 18, 2008 Ashker Dec.
19 ¶ 23 (Doc. # 277); August 27, 2009 Troxell Dec. ¶ 5 (Doc. # 364);
20 January 15, 2010 Ashker Dec. ¶ 7 (Doc. 3 365).
21      The Court notes that Plaintiffs specified how they were
22 damaged by the late receipt of mail in their declarations submitted
23 in support of their summary judgment motion; in the declarations
24 submitted with their trial briefs, they referred back to those
25 summary judgment declarations.  However, the prison's delivery of
26 mail was less efficient in 2005 than it is in 2010.  Defendant
27 Jacquez's improvement in the mail delivery system is commendable.
28                                  10

The Court concludes that the delivery of mail four days past the required seven-day delivery period is insufficient to give rise to irreparable injury.[4]

Because Plaintiffs have not established a First Amendment violation or irreparable injury, the Court finds in favor of Defendant Jacquez on Plaintiffs' First Amendment claim for injunctive relief.[5]

## CONCLUSION

Plaintiffs' motion to file supplemental evidence (Doc. # 378) is granted. The Court finds in favor of Defendant Jacquez on Plaintiffs' First Amendment claim for injunctive relief. The Clerk shall enter judgment in favor of Defendant Jacquez on the First Amendment claim for injunctive relief and in favor of all Defendants on Plaintiffs' other claims as indicated in the March 25, 2009 Order. All parties shall bear their own costs of suit.

IT IS SO ORDERED.

Dated 3/18/2010

CLAUDIA WILKEN
United States District Judge

---

[4] The Court notes that IGI's new procedure of stamping mail upon receipt and upon completion of the screening process has created accountability in that department such that it accomplishes screening of the mail in one or two days. If this system of stamping mail twice were adopted by the mailroom, that facility might also become more efficient in its processing and screening of mail, and better able to demonstrate that mail is not delayed.

[5] Because the Court concludes there is no constitutional violation or irreparable harm, it does not address Defendant's arguments regarding balancing the equities, the public interest, or the availability of money damages.

11

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ASHKER ET AL et al,

        Plaintiff,

v.

SCHWARZENEGGER ET AL et al,

        Defendant.

Case Number: CV05-03286 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 18, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Danny Troxell B-76578
Pelican Bay State Prison
P.O. Box 7500, C-8-101
Crescent City, CA 95531

Todd Ashker C-58191
Pelican Bay State Prison
P.O. Box 7500, D1-119
Crescent City, CA 95531

Dated: March 18, 2010

        Richard W. Wieking, Clerk
        By: Sheilah Cahill, Deputy Clerk